**Cenco Instruments Corporation, Plaintiff-Appellant, v. Edward J. Thomas, Defendant-Appellee.**

**Gen. No. 50,862.**

First District, First Division.

February 20, 1967.

Norville, Walsh & Case, of Chicago (Richard J. Walsh, Robert O. Case and Bernard Wiczer, of counsel), for appellant.

Landesman & Schwartz, of Chicago (Emil Shafran, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

This appeal arises from an action in equity brought by the Cenco Instruments Corporation, plaintiff, to enjoin the defendant, Edward J. Thomas, from continuing employment with a competing company in violation of an alleged restrictive covenant contained in a sales agreement. A temporary injunction was issued restraining the defendant from manufacturing slides as an employee of Robert Waymouth or from otherwise competing with the plaintiff. Supporting evidence was presented at a prompt hearing held before a Master in Chancery who recommended that the restrictive covenant as it applies to this defendant be held void and unenforceable and that the temporary injunction be dissolved. The Chancellor over-

ruled plaintiff's exceptions to the report and ordered the temporary injunction dissolved and plaintiff appeals from this order.

The record on appeal does not include the transcript of the evidence taken by the Master and we were informed by plaintiff's counsel during oral argument that the dispute concerns the law and not the findings of fact.

The Master found that the defendant owned 18 to 20% of the outstanding stock of the Clinton Misco Corp.; that his father and brother owned the remaining stock; and that on May 4, 1963, they entered into a written agreement selling all of the stock to the plaintiff. The following covenants were incorporated in the agreement:

(9) Covenants Not To Compete. Each of the stockholders agrees that, from and after the Closing, he will not (unless acting as an officer or employee of the Purchaser or any of its subsidiaries, or with the Purchaser's prior written consent) from and after the Closing directly or indirectly own, manage, operate, join, control or participate in the ownership, management, operation or control of, or be connected in any manner with, any business under any name similar to the Company's name, and that, for a period of five (5) years after the Closing, none of the stockholders will in any such manner directly or indirectly compete with, or become interested in, any competitor of the Company, provided that John C. Thomas may engage in the preparation of certain kits, which are toys of a scientific nature for children, and which said kits shall contain various scientific apparatus, chemicals, seeds and biological specimens. Such kits shall not be sold to educational institutions in competition with Purchaser. The stockholders agree that the remedy at law for any breach by any of them of the foregoing will be in-

adequate, and that the Purchaser shall be entitled to injunctive relief.

. . . . . .

(22) Governing Law. This contract shall be governed by the law of Illinois where it has been executed.

The Clinton Misco Corp., located in the State of Michigan, produces materials for the biological sciences including the manufacture of slides which are sold to schools throughout the United States and Canada by catalogues distributed by field salesmen. When Misco was purchased by the plaintiff sales of slides amounted to $75,000 of its total sales of $969,000 and were approximately the same for the current year. The defendant was employed by Misco from May 4, 1963, the date of sale, until April 17, 1964, when he was discharged.

He was subsequently employed by Robert D. Waymouth, doing business as Ann Arbor Biological and also located in Michigan, as a highly specialized technician in the manufacture of slides and is paid $2.50 per hour when he is employed. The Master pointed out that no evidence was offered to show he had an interest in Waymouth or that he "manages, operates, controls or participates in such management, operation or control of said business" or that he does any sales work for Waymouth. Misco occasionally purchased slides from Waymouth during the period the defendant was employed by Misco and also after he was employed by Waymouth. In his supplemental report the Master found that Waymouth sold slides to some companies to which Misco also sells slides.

The Master concluded that the restricted activities in the sales agreement did not prohibit mere employment by a competitor where no violation of the specific limitations occurs and that the restrictive covenant was void

139

and unenforceable for failure to contain a reasonable restriction as to area.

The plaintiff contends that defendant's promise to refrain from competing with Misco was intended to protect the good will of that company, and as of necessity precluded the defendant from engaging in direct or indirect competition, whether as an owner or an employee of a competing business, in that area in which the business sold by defendant had customers and suppliers and in which the good will of that business existed.

██ ██ In construing a contract and determining the intention of the parties, the instrument should be read and considered as a whole.

> The intention of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself, but each part of the instrument should be viewed in the light of the other parts. [Citations Omitted.] The primary object of the construction of a contract is to give effect to the intention of the parties, greater regard being given to such intent, when clearly revealed, than to any particular words used in expression thereof. Martindell v. Lake Shore Nat. Bank, 15 Ill2d 272, 283, 154 NE2d 683; 12 ILP, Contracts, §§ 212, 215.

The plaintiff insists that, "[t]he intention of the parties to prevent competition by means of employment as distinguished from a proprietary interest is expressly set forth in paragraph 9 which begins as follows:

> Each of the stockholders agrees that, from and after the closing, he will not *unless acting as an officer or employee of the Purchaser* or any of its subsidiaries. . . ."

From this portion of the covenant he argues that, "[t]he phrase 'unless acting as an . . . employee . . . of Pur-

140

chaser . . . ,' means that the selling stockholders could not utilize their particular skills as an employee of any competitive business, except the business of Cenco, the 'Purchaser.' " We are not in accord.

Following the above quoted part of the covenant is the following:

> . . . from and after the Closing directly or indirectly *own, manage, operate, join, control or participate in the ownership, management, operation or control of, or to be connected in any manner with, any business* under any name similar to the Company's name, and that for a period of five (5) years after the Closing, *none of the stockholders will in any manner directly or indirectly compete with, or become interested in, any competition of the Company.* . . . (Emphasis ours.)

 There is no question that the defendant is an employee on a modest salary and does not directly or indirectly own, manage, operate, control or participate in ownership or management of Waymouth nor is he directly or indirectly interested in that firm except as an employee. Moreover there is no evidence the defendant contacts the customers of Cenco. We interpret the contract as restricting the defendant in having an investment directly or indirectly in a competitive business. If it was the intention of the plaintiff to limit his employment it could have been plainly stated which it is not. Had it limited his employment we would then have to consider whether the restrictive clause for a five year period throughout the United States and Canada was too sweeping and general and much greater than necessary to protect plaintiff's business. See Frisch Corp. v. Ezzell, 25 Ill App2d 134, 166 NE2d 107.

In Alcock v. Alcock, 267 Ill 422, 108 NE 671, cited by the plaintiff, the sales agreement prepared by the seller

of a plumbing business provided that the seller would not go into the plumbing business in Chicago for five years.

There the plaintiff went to work for a plumbing business in Chicago where he exercised a general superintendence over the plumbing jobs, made estimates, consulted customers and solicited business from a former customer. The court held that the words "associate with anyone" written in the contract by the buyer before it was signed by the parties, clearly limited the seller from engaging with anyone in the plumbing business in Chicago for five years. In the case at bar the defendant is a mere employee at a modest salary with no interest in the business. He did not directly or indirectly participate in the management of Waymouth's or solicit business for him. We interpret the words "indirectly compete with" in his contract to mean that the defendant could not set up a dummy ownership or interest in a competitive business which he clearly did not do.

For the reasons given the decree of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY, P. J. and ADESKO, J., concur.